UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.                                                    S1 17 Cr. 460 (DAB)

THOMAS CARRANO,

                    Defendant.

**THE GOVERNMENT'S OMNIBUS MOTIONS *IN LIMINE***

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Michael McGinnis
Alison Moe
Timothy Howard
Assistant United States Attorneys
    *Of Counsel*

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ...................................................................................... 2

   I. Background............................................................................................................... 2

    A. Charges................................................................................................................ 2

    B. Proof at Trial ...................................................................................................... 2

   II. Argument............................................................................................................... 6

CONCLUSION............................................................................................................... 19

## PRELIMINARY STATEMENT

In advance of the June 5, 2018 trial in this case, the Government respectfully submits the following motions *in limine*. First, the Government moves to preclude irrelevant evidence regarding the Government's handling and care of roosters and hens seized from the defendant. Second, the Government moves to preclude irrelevant evidence regarding the alleged historical tradition of cockfighting in the United States and related arguments. Third, the Government moves to admit evidence obtained from the residence of one of the defendant's co-conspirators, Dwight Orr, including records demonstrating the sale of gaffs from Orr to the defendant. Fourth, the Government moves to admit the fact of the discovery at the defendant's residence of the charging instrument in *United States v. Hector Cruz*.

## I. Background

### A. Charges

On May 3, 2018, a Grand Jury returned a superseding indictment (the "Indictment") charging the defendant with one count of conspiring to violate the Animal Welfare Act. *See* Indictment, Dkt. No. 25. The Indictment alleges two objects of the conspiracy: one, that the defendant bred, trained, and raised roosters for purposes of cockfighting, in violation of 7 U.S.C. § 2156(b); and two, that the defendant bought, sold, delivered, and transported gaffs, in violation of 7 U.S.C. § 2156(e). The charges arise from the defendant's operation of a rooster farm in Ontario, New York, where he bred and trained roosters for cockfighting and purchased gaffs for their use in cockfighting.

Trial in this matter is scheduled to begin on June 5, 2018.

### B.  Proof at Trial

The Government expects the evidence presented at trial will establish the following facts, in substance and in part.

Since approximately February 2016, the Animal Cruelty Investigations Squad of the New York City Police Department ("NYPD") and the United States Department of Agriculture ("USDA") have been jointly investigating cockfighting in New York.  By way of background, cockfighting is an activity in which two or more roosters are put forward to fight one another.  The fight ends when one rooster gives up or dies.  Typically, sharp instruments are affixed to the rooster's legs, as weapons, during the fight.  These cockfighting weapons, which are typically made of sharp metal blades, are known as "gaffs."  The plastic variety of these weapons are known as "postiza."  An event containing a series of fights is called a "derby."

The investigation began on or about February 11, 2016, when NYPD officers received community complaints about roosters at a location in the Bronx.[1]  When the officers responded to the location, a man named Hector Cruz introduced himself and gave the officers a tour of the property --- which included a backyard full of roosters.  Through subsequent investigation, NYPD learned that Hector Cruz was a member of the New York State chapter of the United Gamefowl Breeders Association ("NYUGBA").  Until 2016, Thomas Carrano was the president of the NYUGBA.

On or about January 31, 2017, Hector Cruz was arrested pursuant to a complaint charging him with breeding roosters for cockfighting, in violation of the Animal Welfare Act.  *See* Complaint, ECF No.1, <u>United States v. Hector Cruz</u>, 17 Cr. 300 (GWG) (the "Hector Cruz

---

[1] Under Section 161.01 of the New York City Health Code, a rooster is deemed a "wild animal" and ownership and possession of roosters is prohibited within New York City.

Complaint"). Pursuant to a judicially-authorized search warrant, law enforcement officers recovered text messages from Cruz's cell phone, including text message conversations between Cruz and Carrano. The text messages included a message from Cruz to Carrano, stating, in pertinent part: "Henry filled me in on the Derby you guys were at. $5.00 and $10.00 bets at ringside ..in the Ghetto (as you guys see it) the bets are $50.00, $100.00, $200.00 and $500.00 to $1,000.00 and then some. The Arab always arrives at the Pit with $30,000.00 and I don't go unless I have at least $5000.00 to bet with.. fights exchanging $10,000.00.. which is nothing because you bird's life and your self respect/dignity is on the line everytime one of you birds goes into the fight." In addition, shipping records and text messages exchanged between Cruz and Carrano reflect that Cruz sent birds from his farm in the Bronx to Carrano's residence in Ontario, New York, shortly after NYPD officers visited Cruz's rooster farm in the Bronx.

Pursuant to judicially authorized search warrants, the NYPD obtained account data for Hector Cruz's Facebook account, along with two other Facebook accounts operated by Thomas Carrano: Carrano's personal account, and an account for the NYUGBA used by Carrano. The accounts contained numerous conversations in which Carrano discussed cockfighting, purchasing gaffs, attending fights, and buying and selling cockfighting roosters. For example:

- On or about May 12, 2016, the defendant sent a private Facebook message from the NYUGBA account that stated: "I only raise what I can fight. Its been a tough season hard to fight roosters any more mostly fighting drugs."[2]

---

[2] This appears to be a reference to the use of steroids to enhance the fighting capabilities of roosters. As noted below, law enforcement officers recovered steroids from the defendant's rooster farm.

- On or about February 3, 2015, the defendant sent a private Facebook message from the NYUGBA account that stated: "[W]ish you could have seen that fight I won blinded and cut up never lost his snap and aggression."

- On or about October 2, 2012, the defendant sent a private Facebook message from the NYUGBA account that stated: "You need Quick kills I also fight in Postiza spanish fowl its very similiar to the knife just a shorter heel and the birds must be very accurite to get a quick kill they must hit the vital points to win."

In addition to the foregoing, the accounts contained messages in which Carrano stated that the birds he received from Hector Cruz had died in a fight.  Notably, the defendant sent all of the foregoing messages from the NYUGBA account, and not the defendant's personal account.

On or about May 23, 2017, law enforcement executed a judicially-authorized search warrant at Carrano's house and farm in Ontario, New York ("the Carrano Farm").  During the search of the Carrano Farm and accompanying structures, agents found, among other things: gaffs,[3] postizas, equipment for training roosters for cockfighting, and steroids.  They also found numerous roosters.  Following the search of the Carrano Farm, and pursuant to the terms of the search warrant, members of the ASPCA seized the roosters and hens maintained at the Carrano Farm.  The ASPCA has provided treatment and care for the birds pending the resolution of this criminal case.[4]

---

[3] Some of the gaffs were visibly bloody.  An evidence collection technician swabbed the gaffs on the scene.  The swabs were subsequently tested by a DNA analyst, who determined that the gaffs tested positive for the presence of chicken blood.  The Government anticipates calling the DNA analyst as an expert witness at trial and has provided notice to the defendant pursuant to Rule 16 of the Federal Rules of Criminal Procedure.

[4] The seized chickens (and the cost of their care) are the subject of the forfeiture allegation contained in the Indictment.

Within Carrano's residence, agents found, among other things: (1) a copy of the Hector Cruz Complaint, (2) pamphlets about cockfighting and breeding cockfighting roosters, (3) written regimens for training roosters in the weeks leading up to a fight; (4) issues of a cockfighting magazine called the "Feathered Warrior," and (5) a newsletter for the NYUGBA, introducing Hector Cruz as the NYUGBA's "Director of Puerto Rican Relations." Agents also found a pair of gaffs stamped with the initials "D.O.," and a business card for an individual named Dwight Orr, advertising himself as a "hand forger of top quality one piece gaffs for 32 years," and listing prices for types of gaffs. The business card listed an address in Cleveland, Tennessee (the "Orr Premises").

In or about July 2017, agents executed a judicially-authorized search warrant at the Orr Premises. Inside the premises, agents discovered a factory for manufacturing gaffs. The Orr Premises contained, among other things, over one-hundred gaffs along with gaff making material, money orders from customers, and gaffs packaged for mailing to customers.[5] Agents also recovered a notebook that appeared to contain a ledger of Orr's customers ("the Orr Ledger"). The Orr Ledger contained two entries listing purchases of gaffs by Thomas Carrano.

## II. Argument

### A. The Post-Seizure Condition of the Defendant's Birds Is Irrelevant and Inadmissible

#### 1. Background

The Government moves to preclude the defense from introducing evidence concerning, or argument regarding, the Government's post-seizure treatment of the chickens rescued from the Carrano Farm. As discussed in detail below, this evidence is wholly irrelevant as the conduct of

---

[5] Significantly, the gaffs seized from the factory were stamped "D.O.," in the same manner as the pair of gaffs recovered from Carrano's residence.

the defendant—not the ASPCA—is what is on trial.  Further, the evidence would only serve to confuse the jury, waste time, and create a meaningless mini trial, and should be independently excluded under Rule 403.

Since the initiation of charges, the defense has made numerous public pronouncements concerning the allegedly deplorable state of the birds seized from the defendant (birds which have been maintained at great expense and with great care by the ASPCA during the pendency of this proceeding).  For example, following a defense inspection of the chickens, the defendant claimed in a Facebook post that: "Today was beyond a gamefowl fanciers Imagination.  Majority of them looked as if they could drop dead at any minute.  I honestly could only tell a few of them were even mine."  *See* Ex. A.  Further, the defense has noticed an expert, Anthony Saville, to discuss the raising of gamefowl and the treatment of birds maintained by the ASPCA following their seizure from the defendant.  *See* Ex. B. (Expert Report of Anthony Saville) (discussing pictures of birds from time of seizure and arguing "The same Photographs of the birds then and now make my task easier to define the Abuse [sic] of these chickens at the hands of the ASPCA").[6]

While the Government strongly disputes such characterizations, the post-seizure care of the defendant's chickens is irrelevant and should not be before the jury.  Moreover, such evidence would only serve to confuse the jury and result in a needless mini-trial regarding the exact quality of care received by the birds.  The evidence and argument should be excluded.

**2.  Legal Standard**

Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action

---

[6] The scope of the permissible testimony of Anthony Saville is the subject of a separate motion *in limine*.

more probable or less probable than it would be without the evidence."  Fed. R. Evid. 401.
Evidence is admitted where it is necessary to complete the story of the crimes on trial, *see United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000), or to show "the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed," *United State*s *v. Daly*, 842 F.2d 1380, 1388 (2d Cir. 1988).  Rule 403 of the Federal Rules of Evidence authorizes the exclusion of relevant evidence where its "probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). *United States v. Bari*, 750 F.2d 1169, 1178-79 (2d Cir. 1984) (affirming refusal to permit cross-examination of witness that would lead to "mini-trial").

### 3.  Discussion

 Any evidence regarding the Government's post-seizure care of the chickens is wholly irrelevant under Rule 401.  Such evidence has no bearing whatsoever on the evidence that will be offered against the defendant, namely that the defendant conspired with others to raise, breed, train, and sell roosters for purposes of cockfighting and to purchase gaffs for their use in training and fighting roosters.  *See* Fed. R. Evid. 401.  Ultimately, the issues at trial concern how *the defendant* raised his birds; how *the defendant* trained his birds; how *the defendant* bred his birds; and what *the defendant* planned to do with his birds.  The Government's care of the birds post-seizure simply does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." *Id.*[7]

---

[7] The Government intends to offer evidence on the condition of the roosters at the Carrano Farm at the time of the search and seizure through photographs that were taken contemporaneously with the search of the Carrano Farm.  The Government does not intend to bring roosters or any other animals into the Courtroom, nor does it indent to offer evidence of their current condition.

Moreover, allowing such inflammatory allegations before the jury would result in all the concerns implicated by Rule 403: unfair prejudice, confusion of the issues, and misleading the jury, as well as undue delay and waste of time. Testimony or argument regarding the post-seizure treatment of the defendant's chickens would require the Government to present evidence regarding the care and conditioning of the birds following their seizure (testimony wholly irrelevant to the charges) in order to clarify the record. The defense expert report discusses an alleged "broken leg" by one of the birds and expresses his "opinion," that "75% of the birds have been cockfighting in ASPCA custody." Ex. B. at 5. In other words, the defense asserts that the *ASPCA has been fighting roosters*. In response to these bald assertions, the Government would need to call ASPCA personnel to discuss the housing of the birds; the care and conditioning of the birds; and any necessary medical care afforded to the birds. The resulting mini-trial would serve only to distract the jury from the key issues of the case. Worse still, the jury would be confused as to the relevant issues and might shift attention away from the key question—whether the defendant raised, bred, and trained chickens for cockfighting—to a wholly irrelevant question—whether the Government and the ASPCA adequately cared for the birds following their seizure.

In short, the Government and the ASPCA are not on trial, and these matters are entirely irrelevant. Accordingly, the Court should preclude the defendant from introducing at trial testimony, evidence, or argument about the care and alleged mistreatment of the birds seized from the defendant.

## B. Evidence and Argument Regarding the History of Cockfighting and/or the Unconstitutionality of the Animal Welfare Act Should be Precluded

The Government seeks to exclude any evidence or argument from the defense regarding the historical tradition of cockfighting in the United States and/or claims concerning the

unconstitutionality of the Animal Welfare Act.  Evidence or arguments of this sort are irrelevant and risk creating confusion and prejudice and amount to an improper appeal for jury nullification.

As discussed above, Rule 403 of the Federal Rules of Evidence authorizes the exclusion of relevant evidence only if its "probative value is substantially outweighed by the danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403 (emphasis added). "[E]vidence is unduly prejudicial only when it tends to have some adverse effect upon a defendant beyond tending to prove the fact or issue that justified its admission into evidence." *United States v. Kadir*, 718 F.3d 115 (2d Cir. 2013) (quotation marks and alterations omitted).  Courts have been vigilant to prohibit defendants from arguing for jury nullification. Jury nullification is not a "right or something that a judge should encourage or permit if it is within the judge's authority to prevent." *United States v. Thomas*, 116 F.3d 606, 615 (2d Cir. 1997).  Accordingly, the Second Circuit has set forth a clear instruction for trial judges when jury nullification issues present themselves:

> Inasmuch as no juror has a right to engage in nullification . . . and, on the contrary, it is a violation of a juror's sworn duty to follow the law as instructed by the court . . . trial courts have a duty to forestall or prevent such conduct, whether by firm instruction or admonition . . . .

*Id*. at 616 (emphasis added). Because the jury enjoys no right to nullify criminal laws, the defendants have no right to (1) adduce evidence that tends to be probative of the irrelevant issue of nullification and which is not probative of any defense at law, (2) argue nullification to the jury or (3) have the Court give a nullification instruction to the jury. *United States v. Funches*, 135 F.3d 1405, 1409 (11th Cir. 1998).

Potential defense arguments concerning the history of cockfighting within the United States or asserting that the Animal Welfare Act is unconstitutional are wholly irrelevant and amount to impermissible appeals to nullification.  While cockfighting laws have a lengthy and

contentious history in the United States, cockfighting is illegal in New York, *see* N.Y. Agric. & Mkts Law § 351, and prohibited federally under the Animal Welfare Act, *see* 7 U.S.C. § 2156. The history of cockfighting in the United States is simply not relevant to the present case. Likewise, the defendant should not be permitted to confuse the jury by arguing that the Animal Welfare Act violates his constitutional rights.  Should the defendant believe the Animal Welfare Act is unconstitutional, that is a legal question the defendant must argue before the Court—not the jury.  The defendant filed no motions and should not now be permitted to confuse the jury by inserting a legal question into the jury's factual determinations.

### C. The Dwight Orr Ledger and the Tennessee Gamefowl Breeders Association Newsletter Are Admissible as Co-Conspirator Statements and Statements Against Interest

#### 1. Background

Count One of the Indictment charges a two-object conspiracy to violate the Animal Welfare Act.  Title 7 U.S.C. Section 2156(e) makes it a crime to engage in the buying, selling, delivering, or transporting of sharp instruments or gaffs for use in an animal fighting venture.  As described above, law enforcement officers executed a search of the Orr Premises in Tennessee.  The Orr Premises was operated by Dwight Orr, the Vice President of the Tennessee chapter of the United Gamefowl Breeders Association ("TGBA").  During the search, law enforcement agents recovered a newsletter for the TGBA listing Dwight Orr as the Vice President of the organization (the "TGBA Newsletter").  In addition, agents recovered the Orr Ledger, which ledger documented the purchase and sale of gaffs.  The Orr Ledger lists the name, address, date, and order of various customers.  The Orr Ledger listed the defendant's name and address on at least two occasions, reflecting multiple purchases of gaffs by the defendant.

In addition, in numerous Facebook conversations, the defendant encouraged individuals to contact Orr in order to purchase gaffs.  The following is one example:

11

**CODY TURNER:** I was talking to Travis about gettin a set of short heels an he said he got a set from you that Dwight Orr made and was very good quality spurs, do you think you could have him make me a set of short heels?

**NYUGBA NYUGBA**: Not a problem Cody.

**CODY TURNER:** Awesome, I'd like 1 1/2, just let me no what I need to do

**CODY TURNER:** How much does mr. Orr charge for a set

**NYUGBA NYUGBA:** Hello Cody I think I paid hundred and 25 for a set .

**NYUGBA NYUGBA:** I am glad you remided me

**CODY TURNER:** Ok are they one piece? And have u ever had a problem with them breaking?

**NYUGBA NYUGBA:** They are one piece never a problem

**CODY TURNER:** Ok I broke one last weekend n the drag and that was a sick feeling, what do I need to do to get the money to him?

**NYUGBA NYUGBA:** I will call him tonight.

**CODY TURNER:** Ok thank you

**NYUGBA NYUGBA:** Hello Cody Dwight orr [Phone Number Redacted] just tell him you are a friend of Tommy Carrano president of NY and highly recommended his collectibles.

**CODY TURNER:** Awsome thank you very much, what pattern do I need to tell him for 1 1/2?

**NYUGBA NYUGBA:** Yes Inch and a half let me know how it goes I have been very busy and have not called him but if you tell him you know me it should not be an issue. He is a personal friend

**NYUGBA NYUGBA:** Tell him I said hello

Other Facebook posts confirm the defendant's close relationship with Orr.  For instance, on September 15, 2015, the NYUGBA NYUGBA Facebook account stated: "I will be in Tennessee with Dwight orr but you guys will have a good one there.  Hopefully next year."

## 2.  Legal Standard

### a. Co-conspirator Statements

12

Hearsay is "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted" and generally is not admissible unless it falls within one of the exclusions or exceptions to the rule against the admissibility of hearsay.  *See* Fed. R. Evid. 801(c), 802.  Rule 801(d)(2)(E) of the Federal Rules of Evidence provides in relevant part that "[a] statement is not hearsay if . . . the statement is offered against an opposing party and was made by the party's co-conspirator during and in furtherance of the conspiracy."  To admit a statement under Rule 801(d)(2)(E), the Court must find by a preponderance of the evidence "(a) that there was a conspiracy, (b) that its members included the declarant and the party against whom the statement is offered, and (c) that the statement was made during the course of and in furtherance of the conspiracy."  *United States v. Coppola*, 671 F.3d 220, 246 (2d Cir. 2012).  "Although Rule 801(d)(2)(E) requires that both the declarant and the party against whom the statement is offered be members of the conspiracy, there is no requirement that the person to whom the statement is made also be a member."  *United States v. James*, 712 F.3d 79, 105–06 (2d Cir. 2013) (quotation marks omitted).

In determining the existence and membership of the alleged conspiracy, the court must consider the circumstances surrounding the statement, as well as the contents of the alleged coconspirator's statement itself."  *United States v. Gupta*, 747 F.3d 111, 123 (2d Cir. 2014).  When determining whether the predicate conspiracy has been established, the district court is not bound by the rules of evidence.  *See* Fed. R. Evid. 104(a).  "[T]he district court may consider the hearsay statement itself to determine the existence of a conspiracy," but "'there must be some independent corroborating evidence of the defendant's participation in the conspiracy."  *United States v. Padilla*, 203 F.3d 156, 161 (2d Cir. 2000) (quoting *United States v. Tellier*, 83 F.3d 578, 580 (2d Cir. 1996)) (citing *Bourjaily v. United States*, 483 U.S. 171, 181 (1987)).  The Second Circuit has

13

made clear that "statements proffered as co-conspirator statements may be admitted in evidence on a conditional basis, subject to the later submission of the necessary evidence" establishing that a conspiracy involving the defendant existed.  *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993) (citing *United States v. Geaney*, 417 F.2d 1116, 1120 (2d Cir. 1969)); *see also United States v. Miller*, No. 12 Cr. 368 (PAC), 2012 U.S. Dist. LEXIS 145419, at *11-12 (S.D.N.Y. Oct. 9, 2012) (denying motion for a pretrial hearing and noting that "[i]n the Second Circuit, district courts 'routinely admit[] coconspirator statements into evidence in the presence of the jury on a conditional basis, subject to the later submission of the necessary evidence. . . .'" (quoting *United States v. Saneaux*, 365 F. Supp. 2d 488, 490 (S.D.N.Y. 2005))).

To be in furtherance of a conspiracy, the statement must in some way have been designed to promote or facilitate achievement of a goal of the ongoing conspiracy.  Under this standard, a co-conspirator statement is admissible if it "reasonably [can] be interpreted as encouraging a co-conspirator or other person to advance the conspiracy, or as enhancing a co-conspirator or other person's usefulness to the conspiracy."  *United States v. Tarantino*, 846 F.2d 1384, 1412 (D.C. Cir. 1988).  Thus, statements are in furtherance of the conspiracy if they:  (1) inform or provide an update as to the status or progress of the conspiracy, *see United States v. Desena*, 260 F.3d 150, 158 (2d Cir. 2001); (2) "prompt the listener . . . to respond in a way that promotes or facilitates the carrying out of a criminal activity," *United States v. Maldonado-Rivera*, 922 F.2d 934, 958 (2d Cir. 1990); (3) "seek to induce a coconspirator's assistance," *Desena*, 260 F.3d at 158 (internal quotations omitted); (4) "provide reassurance," *id.*; (5) "serve to foster trust and cohesiveness," *id.*; *United States v. Simmons*, 923 F.2d 934, 945 (2d Cir. 1991); (6) "facilitate and protect" the conspiratorial activities, *United States v. Diaz*, 176 F.3d 52, 87 (2d Cir. 1999); or (7) inform a co-

conspirator of "the identity and activities of his coconspirators," *United States v. Rastelli*, 870 F.2d 822, 837 (2d Cir. 1989); *United States v. Rahme*, 813 F.2d 31, 36 (2d Cir. 1987).

### b. Statements Against Penal Interest

Rule 804(b)(3) allows the admission of statements against a declarant's penal interest if the declarant is unavailable as a witness. A statement qualifies for admission under this rule if it is one that

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it . . . had so great a tendency to . . . expose the declarant to civil or criminal liability; and
>
> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness . . . .

Fed. R. Evid. 804(b)(3).

"In assessing whether a statement is against penal interest within the meaning of Rule 804(b)(3), the court must first ask whether 'a reasonable person in the declarant's shoes would perceive the statement as detrimental to his or her own penal interest.'" *United States v. Gupta*, 747 F.3d 111, 127 (2d Cir. 2014) (quoting *United States v. Saget*, 377 F.3d 223, 231 (2d Cir. 2004)). That question, in turn, "can be answered only 'in light of all the surrounding circumstances.'" *Id.* (quoting *Williamson v. United States*, 512 U.S. 594, 604 (1994)). "A statement will satisfy Rule 804(b)(3)'s requirement that it 'tended' to subject the declarant to criminal liability if it would be probative in a trial against the declarant." *United States v. Persico*, 645 F.3d 85, 102 (2d Cir. 2011) (quotation marks omitted). Once the court is satisfied that the statement is against the declarant's penal interest, it "must then determine whether there are corroborating circumstances indicating both the declarant's trustworthiness and the truth of the statement." *Id.* (quotation marks omitted). The inference of trustworthiness "'must be strong, not merely allowable.'" *Id.* (quoting *United States v. Salvador*, 820 F.2d 558, 561 (2d Cir. 1987)).

### 3.  Discussion

The entries contained in the Orr Ledger and the TGBA Newsletter should be admitted under Fed. R. Evid 801(d)(2)(E) as co-conspirator statements made in furtherance of a conspiracy, or, in the alternative, as statements against penal interest.  As an initial matter, the defendant and Orr are members of the same conspiracy—the United Gamefowl Breeders Association—and conspired together and with others to promote and engage in cockfighting.  Indeed, both Carrano and Orr served as officers in their respective state chapters of the United Gamefowl Breeders Association (Orr in Tennessee; the defendant in New York).  Beyond their mutual membership, the two also worked closely to assist fellow co-conspirators in attaining cockfighting instruments.  For instance, the defendant steered other co-conspirators to Orr for purposes of buying gaffs ("Hello Cody Dwight orr [Phone Number Redacted] just tell him you are a friend of Tommy Carrano president of NY and highly recommended his collectibles."), and did so with the knowledge that the gaffs would be used for cockfighting ("CODY TURNER: Ok I broke one last weekend n the drag and that was a sick feeling, what do I need to do to get the money to him?").[8]  Likewise, the defendant discusses visiting Orr in Tennessee ("NYUGBA NYUGBA: I will be in Tennessee with Dwight orr but you guys will have a good one there.  Hopefully next year").

Second, both the statements made in the Orr Ledger and the statements made in the TGBA Newsletter are statements made in furtherance of the conspiracy.  Courts regularly admit into evidence ledgers documenting the sale of contraband (and under 7 U.S.C. § 2156(e), gaffs are contraband) as co-conspirator statements made in furtherance of the conspiracy. *See, e.g.*, *United States v. Ashraf*, 320 F. App'x 26, 29 (2d Cir. 2009) (holding that "the District Court did not err by

---

[8] As the testimony at trial will establish, a "drag" is a term used for a cockfight.  Accordingly, it appears that Cody Turner broke a gaff during a cockfight the prior weekend and was looking to buy a better quality gaff.

admitting into evidence the drug ledgers" as co-conspirator statements).   The Orr Ledger denotes the name, address, and order for customers seeking gaffs. Such entries provide an update as to the status or progress of the conspiracy, *see United States* v. *Desena*, 260 F.3d 150, 158 (2d Cir. 2001).

In the alternative, the statements made in the Orr Ledger easily satisfy the requirements for admission as statements against penal interest.  The Government has conferred with counsel for Mr. Orr, and has learned that should Mr. Orr be called to testify, he would invoke his Fifth Amendment protection against self-incrimination, which renders Mr. Orr unavailable under Rule 804.  *See United States v. Williams*, 927 F.2d 95, 99 (2d Cir. 1991).

With respect to the first prong of the test, there can be no question that a ledger of criminal conduct—here, a ledger detailing a criminal gaff-making enterprise—exposes its author to criminal prosecution.  Turning to the second prong of the test, the contents of the Orr Ledger are reliable and corroborated by other evidence, including the evidence recovered at the Orr Premises and Carrano's Facebook messages discussing purchasing gaffs form Orr.

Accordingly, the Orr Ledger and the TGBA Newsletter should be admitted as co-conspirator statements, or, in the alternative, as statements against penal interest.

### D.   The Fact of Discovery of the Hector Cruz Complaint is Admissible and Relevant
### 1.   Background

During the search of the Carrano farm, law enforcement agents found a copy of the Hector Cruz Complaint in the defendant's basement, together with pamphlets regarding raising roosters for cockfighting.  At trial, the Government seeks to elicit testimony from a law enforcement agent, who would describe discovering a copy of the Hector Cruz Complaint at the defendant's residence. The Government does not seek to introduce, as an exhibit, a copy of the Hector Cruz Complaint;

instead, the Government simply intends to elicit testimony explaining that the Hector Cruz Complaint was discovered in the defendant's basement.[9]

### 2. Legal Standard

As discussed above, Federal Rule of Evidence 401 defines "relevant evidence" as "evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Fed. R. Evid. 401.

### 3. Discussion

The Government submits that the defendant's possession of a copy of the Hector Cruz Complaint is relevant and admissible, for two reasons.  First, Hector Cruz is one of the defendant's co-conspirators—Cruz was a member of the NYUGBA who discussed cockfighting with the defendant and sent the defendant roosters, one of which subsequently died in a cockfight. The Complaint is further evidence corroborating the existence of the conspiracy.  Accordingly, the defendant's possession of the Hector Cruz Complaint is relevant to show the relationship between these two co-conspirators: Carrano and Cruz had a sufficiently close relationship that Carrano learned of Cruz's apprehension by law enforcement and not only tracked Cruz's criminal case, but downloaded and printed the publicly filed complaint.  Because the Government has charged the defendant with participating in a criminal conspiracy—of which Hector Cruz was a member—the Government is entitled to elicit this testimony as proof of the relationship between Cruz and Carrano.  Second, the defendant's possession of the Hector Cruz Complaint demonstrates his consciousness of guilt and his concern about detection by law enforcement.  A jury could

---

[9] The Government has no objection to a jury instruction indicating that a Complaint is merely an accusatory instrument and not evidence that a defendant committed a crime.

reasonably infer that the reason Carrano had, in his house in Ontario, New York, a copy of a criminal complaint for a man in the Bronx, was because the two men were involved in a criminal conspiracy, and Carrano was concerned that his criminal conduct might be discovered during the Government's investigation.

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's Motions *in Limine* in their entirety.

Dated: New York, New York
      May 8, 2018

Respectfully submitted,

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York


By:    _/s/_____
       Alison Moe
       Michael McGinnis
       Timothy Howard
       Assistant United States Attorneys
       Tel.: 212-637-2305/2225/2308

cc: All counsel of record (by ECF)