UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA

v.

THOMAS CARRANO,

        Defendant.

S1 17 Cr. 460 (DAB)

# THE GOVERNMENT'S MOTION TO PRECLUDE TESTIMONY
# FROM ANTHONY SAVILLE

GEOFFREY S. BERMAN
United States Attorney for the
Southern District of New York
One St. Andrew's Plaza
New York, New York 10007

Alison Moe
Michael McGinnis
Timothy Howard
Assistant United States Attorneys
   *Of Counsel*

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................ 2

   I. Background.......................................................................................................................... 2

      A. Search of the Carrano Farm ........................................................................................... 2

      B. The Saville Report......................................................................................................... 3

   II. Applicable Law .................................................................................................................. 5

   III. Argument .......................................................................................................................... 5

      A. Mr. Saville Should Not Be Permitted to Testify Regarding the Indictment or Alleged Government Misconduct.................................................................................................... 7

      B. Mr. Saville's Opinions on the Bolin Report and Liu Report Should be Precluded ........... 8

      C. Mr Saville Should Not be Permitted to Testify Regarding the ASPCA's Treatment of the Seized Chickens ................................................................................................................ 9

CONCLUSION............................................................................................................................ 11

**PRELIMINARY STATEMENT**

On May 4, 2018, pursuant to Rule 16(b)(1)(C) of the Federal Rules of Criminal Procedure, the defense noticed Anthony Saville as an expert witness (the "Expert Disclosure"). The Expert Disclosure states that Mr. Saville will testify regarding "all aspects of breeding, culling, training and judging poultry and gamefowl." In addition, the Expert Disclosure provided a copy of Mr. Saville's credentials and a "report" summarizing his opinions. *See* Exhibit A ("Report for Tommy Cerrano [sic] on my interpretation of the prosecution endictment [sic]") (the "Saville Report"). The Saville Report and significant portions of the opinions and proposed testimony of Mr. Saville should be excluded under Rules 401 and 403 of the Federal Rules of Evidence. Far from assisting the jury in understanding the issues presented in the case, Mr. Saville's testimony is irrelevant and would only serve to confuse the issues, distract the jury from the charges contained in the Indictment, and result in a needless mini-trial.

**I. Background**

   **A. Search of the Carrano Farm**

On May 23, 2017, law enforcement executed a judicially-authorized search warrant at Carrano's house and farm in Ontario, New York ("the Carrano Farm"). They found, among other things: gaffs, postizas, and equipment for training roosters for cockfighting. They also found numerous chickens. Consistent with the terms of the search warrant, the American Society for the Prevention of Cruelty to Animals ("ASPCA") assisted law enforcement in executing the search warrant. The ASPCA conducted an examination of each of the chickens maintained at the Carrano Farm, which examination documented each chicken's estimate age, weight, and condition. In addition, each chicken was photographed. This examination was compiled into a report prepared by Doctor of Veterinarian Medicine Alison Liu (the "Liu Report"). The Government does not anticipate calling Dr. Liu or introducing the Liu Report during trial.

A Regional Investigator for the ASPCA, Josh Bolin, also assisted in the search. Following the search, Mr. Bolin prepared a report documenting his conclusions regarding the Carrano Farm (the "Bolin Report"). Mr. Bolin concluded that the Carrano Farm contained "substantial evidence of an illegal cockfighting operation." His conclusions were based upon his examination of the gamefowl and the physical evidence recovered from the Carrano Farm. The Government does not intend to call Mr. Bolin as a witness or otherwise introduce into evidence the Bolin Report. Nonetheless, the Government provided the defendant with a copy of the Bolin Report to aid in the defendant's preparation for trial.

Following the search of the Carrano Farm, the ASPCA took custody of the chickens seized from the Carrano Farm. The ASPCA has continued to maintain and care for the chickens during the pendency of the current proceeding. On or about September 26 and 27, 2017, the defendant, Mr. Saville, and defense counsel inspected the seized chickens.

### B. The Saville Report

Following the inspection of the seized chickens, Mr. Saville prepared the Saville Report (*i.e.,* the "Report for Tommy Cerrano [sic] on my interpretation of the prosecution endictment [sic]"). Mr. Saville begins his report with an analysis of the prosecution itself. Mr. Saville states: "The evidence is conjecture at least to incriminate this man by bending the facts and manufacturing (leading) a whole case based on their idea of what they perceive to be Cockfighting." Ex. A. at 1. Mr. Saville compares the practice of showing gamefowl to the Westminster Kennel Club and their annual show in New York. Mr. Saville speculates that if he were "single minded enough and blinded by my perceived morality I could easily compile a Felony case to incriminate the owners of these dogs for Cruelty to Animals." *Id.* Mr. Saville concludes his introduction by opining that "the evidence collected by the raiders at Thomas Carrano's farm has in my opinion been at best compiled in a negative way. Possibly leading and I use the legal term here for leading the

3

prosecution to form a negative conclusion." *Id.* With that established, Mr. Saville begins to analyze the evidence in the case. Construing the Saville Report liberally, Mr. Saville appears to provide three areas of testimony and opinion.

First, Mr. Saville provides commentary on the Bolin Report. Mr. Saville provides his opinion on the appropriate ratio of roosters to hens, fly pens, keeps, the process of dubbing (*i.e.* of cutting of the comb, wattle, and ear lobes from roosters), gaffs,[1] and scales, among other items recovered or documented as part of the search. *Id.* at 2. At best, Mr. Saville appears to opine that the items recovered during the seizure were consistent with common farming techniques and consistent with raising gamefowl for purposes of preservation.

Second, Mr. Saville critiques the Liu Report. Mr. Saville comments at length that poultry shows require that the spur of the rooster be trimmed to prevent injury to any poultry handler.

Third, Mr. Saville discusses the treatment of the birds by the ASPCA following their seizure from the Carrano Farm. Mr. Saville concludes that "the birds at the holding facility have been fighting in my opinion." *Id.* at 4. Mr. Saville then stated that his inspection discovered "slipped bills, half grown spurs, scalping and missing and broken feet and toes." *Id.* Specifically, Mr. Saville states that "Rooster B12 has a broken leg that has recovered from a greenstick fracture and a gammy leg." *Id.* at 5. Mr. Saville notes that the birds were originally photographed at the time of seizure and that such photographs will "make my take easier to define the Abuse of these chickens at the hands of the ASPCA." *Id.*

---

[1] Saville asserts—without offering the basis for this "expert opinion," that the cockfighting weapons seized from the defendant's residence "were an inheritance from Joe Z in Maryland an Italian descendant like Tommy Carrano. Joe was dying and wanted Tommy to have all his Gamefowl Paraphernalia." Such testimony plainly does not constitute an expert opinion, and is an improper attempt to introduce rank hearsay through the guise of an expert witness.

4

## II. Applicable Law

Under Rule 702, an expert may testify if his or her "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." Fed. R. Evid. 702. The party that proffers expert testimony bears the burden of showing that it is admissible. *See Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987). The trial court must also find that the proposed testimony is both relevant and reliable prior to admitting it into evidence. *Daubert v. Merrell Dow Pharm., Inc.*, 509 U.S. 579, 589-90 (1993); *see Kumho Tire Co., Inc. v. Carmichael*, 526 U.S. 137, 141 (1999). Specifically, the trial judge has "the task of ensuring that an expert's testimony both rests on a reliable foundation and is relevant to the task at hand." *Daubert*, 509 U.S. at 597. The trial judge's exclusion of expert testimony will be affirmed unless it constitutes an abuse of discretion. *See General Elec. Co. v. Joiner*, 522 U.S. 136, 139, 142 (1997).

Rules 401 through 403 of the Federal Rules of Evidence likewise provide that relevant evidence is admissible when it tends to make the existence of any fact that is of consequence more or less probable than it would be without the evidence, but may be excluded if its probative value is substantially outweighed by, among other things, the danger of unfair prejudice, confusion of the issues, and misleading the jury. "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 . . . exercises more control over experts than over lay witnesses." *Daubert*, 509 U.S. at 595 (citation and quotations omitted).

## III. Argument

The Saville Report and portions of the opinions contained therein should be excluded under Rule 702, Rule 401, and Rule 403.

5

The Court should preclude the substance of the Saville Report except in the narrowly prescribed areas concerning the issue of the raising, training, and judging of gamefowl for purposes of poultry shows, to the extent the defense lays the proper foundation.[2]  Specifically, the Saville Report discusses the following areas:

- "Chickens are pampered and groomed for their day at the show."

- "The American Poultry Association, the American Bantam association and the American Game Fowl Society hold regular shows and a Special Championship chicken who comparable to the Westminster Dog Show is held each year with up to 12,000 entries. . . . A poultry show is similar with judges judging different classes."

- "I have personally judged [the New York Gamefowl Breeders Association's] show in the early 2000s."

- "The ratio [of cocks to hens at the Carrano Farm] is exactly what I would expect at any one of the thousand of show fowl breeders countrywide."

- "BIRD Co 15 as confiscated by the ASPCA was a commercial rooster used either for egg producing or meat."

- "[The] drop pens at the Carrano farm have shaded tops and are used to spell chickens on lush grass and clover.  Preventing boredom and providing super nutrition."

- "Poultry fanciers keep their birds in single pens so that their health and feather condition are perfect for show day."

- "Every weekend there is a chicken show somewhere in the USA.  Thousands of Old English Game Bantams or Old English Game Fowl are shown.  They have ALL been dubbed or surgically altered as required in the APA, ABA and AGFS Standards."

- "The American Gamefowl Standard requires that all spurs are cut short so that the poor old judge is not maimed by the long spurs."

- "All chickens at every show have to conform to a weight."

---

[2] While these topics are the topics set forth in the defendant's expert notice, Mr. Saville's report extends well beyond these narrowly prescribed areas.

6

- "I would expect to find labeled eggs at any show poultry fanciers facility."

- "At a breeding facility for egg producing or commercial chickens. The breeding males are all surgically altered or dubbed. This is done to improve fertility."

- "Roosters and Hens grow spurs. There are 2 one on each leg for normal Game Chickens. Some breeds have more than one spur on each foot Example the Sumatra Game. As a poultry judge and as a poultry Show Society the American Game Fowl Society require ALL the males to have their spurs trimmed for the show. This eliminates the poor old judge having a sharp 2 and a half inch spur in his arm or leg when the bird is handled for show. The sawing off of the spur or the removal of the spur with a Dremmel Tool is comparable to cutting your nails. Spurs can also be twisted off. A competent poultry handler can twist the outer spur off as nature intended."

Where Mr. Saville seeks to testify outside these narrow areas, his testimony should be precluded. Specifically, Mr. Saville should not be permitted to testify regarding the Indictment or alleged Government misconduct; the Bolin Report and the Liu Report; or the treatment of the chickens following their seizure from the Carrano Farm.

### A.  Mr. Saville Should Not Be Permitted to Testify Regarding the Indictment or Alleged Government Misconduct

As stated in its title, the Saville Report purports to be an "interpretation of the prosecution endictment [sic]." Ex. A. The introduction to the Saville Report provides inflammatory commentary on the prosecution and the indictment. For example, the Saville Report states: "The evidence is conjecture at least to incriminate this man by bending the facts and manufacturing (leading) a whole case based on their idea of what they perceive to be Cockfighting." Mr. Saville continues: "The evidence collected by the raiders at Tommy Carrano's farm has in my opinion been at best compiled in a negative way. Possibly leading and I use the legal term here for leading the prosecution to form a negative conclusion." Mr. Saville hypothesizes regarding "the public indignation" that would arise if "the ASPCA people arrested the Westminster dog handlers for cruelty to animals and confiscated the dogs." *Id.* at 2. Such commentary is not the type of testimony contemplated by Rule 702, and, even it were, Mr. Saville is not qualified to offer expert

7

testimony on the methods of a criminal investigation and prosecution. Additionally, speculation as to the basis for the Government's prosecution is simply not relevant. The Government is not on trial; the defendant is on trial. The question before the jury is whether Thomas Carrano raised, bred, and trained roosters for purposes of cockfighting and whether he purchased gaffs in interstate commerce. Whether investigators from the ASPCA misled the Government is not relevant. Whether breeders from the Westminster Kennel Club could be charged criminally is not relevant. The defense should not be permitted to distract the jury from the charged conduct. Testimony and opinions by Mr. Saville regarding the indictment and alleged government misconduct should be precluded.

### B. Mr. Saville's Opinions on the Bolin Report and Liu Report Should be Precluded

The Saville Report discusses at length the Bolin Report and the Liu Report—neither of which the Government seeks to admit at trial and neither of whom the Government currently intends to have testify at trial. The portions of the Saville Report discussing the Bolin Report and the Liu Report and any testimony regarding those reports should be precluded.

The Saville Report largely comprises a running commentary on the Bolin Report, attempting to rebut the opinions made in the Bolin Report, offering sarcastic asides, and engaging in factual speculation (or at least providing no factual basis for Mr. Saville's assertions). For instance, Mr. Saville appears to insult Mr. Bolin: "Mr Bolin next refers to a KEEP. *Surely he is aware* that all poultry fanciers keep their birds in single pens so that their health and feather condition are prefect for show day" (emphasis added). *Id.* at 2. Likewise, Mr. Saville assumes and speculates regarding facts: "Mr Bolin then leads (Legal Term) with a whole descriptive sentence on a burlap bag covered bench. I supply 2 answers. First this bench was inherited from Mr. Joe Z. Second this bench could be used to ensure that the show bird is CORKY a show term used to describe a chickens condition." *Id.* Mr. Saville cannot offer testimony in the guise of an

8

expert regarding "Mr. Joe Z's" inheritance. To be sure, the Court may permit Mr. Saville to testify regarding the training, raising, and showing of gamefowl, including how certain evidence found on the defendant's farm might be used in furtherance of such lawful pursuits (as delineated above). The Court should not permit Mr. Saville, however, to comment sarcastically on a report unseen by the Jury, engage in rampant factual speculation, and comment on the criminal prosecution.

Likewise, the Court should not permit Mr. Saville to testify regarding the Liu Report. Mr. Saville also provides running commentary on the Liu Report, specifically noting that the report documents whether the spurs of the rooster were altered. While Mr. Saville could potentially be permitted to testify as to why a spur might be altered, he should not be permitted to testify that "Something I have never seen used as evidence before is The Altering of the spurs on a rooster. This is a new potential attempted incriminating tool for perceived Cockfighting." *Id.* at 3. Such testimony is wholly irrelevant to the criminal charges and risks misleading the jury regarding the issues at trial.

### C. Mr Saville Should Not be Permitted to Testify Regarding the ASPCA's Treatment of the Seized Chickens

As set forth in the Government' omnibus motions *in limine*, the Court should not permit evidence regarding the Government's and ASPCA's post-seizure care of the chickens. This analysis does not change even if the source of the testimony is a purported expert. Where testimony is irrelevant, the source of the testimony does not alter the analysis. *See United States v. Stewart*, 433 F.3d 273, 312-13 (2d Cir. 2006) (affirming district court's preclusion of expert testimony concerning the legality of a certain stock trade, given that the testimony was irrelevant to whether the defendant had lied about the trade to investors, which was the subject of the criminal charge); *see also In re Air Crash Disaster at New Orleans, Louisiana*, 795 F.2d 1230, 1233 (5th Cir.1986) (noting that "trial courts must be wary lest the expert become nothing more than an

advocate of policy before the jury" and that "the trial judge ought to insist that a proffered expert bring to the jury more than the lawyers can offer in argument"). The post-seizure treatment of the chickens has no relevance to the evidence that will be offered against the defendant. The issues at trial concern how the defendant raised and trained his birds; not how the Government cared for those birds following their seizure. The Government's care of the birds post-seizure simply does not have "any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable." Fed. R. Evid. 401.

Moreover, allowing such inflammatory allegations before the jury would result in all the concerns implicated by Rule 403: unfair prejudice, confusion of the issues, and misleading the jury, as well as undue delay and waste of time. Mr. Saville's testimony regarding alleged "slipped bills, half grown spurs, scalping and missing and broken feet and toes" and his conclusion that in his opinion there exists "definate [sic] proof that these roosters had been fighting"[3] would create a needless mini-trial regarding the treatment of the birds. Should Mr. Saville be permitted to testify regarding the post-seizure care of the chickens, the Government would need to call ASPCA personnel to discuss the housing of the birds; the care and conditioning of the birds; and any necessary medical care afforded to the birds. The resulting mini-trial would serve only to prolong the trial and distract the jury from the key issues of the case.

The Government and the ASPCA are not on trial; the defendant is on trial. Accordingly, the Court should preclude Mr. Saville from introducing his report and from testifying regarding the care and alleged mistreatment of the birds seized from the defendant.

---

[3] To the extent that evidence of cockfighting while in ASPCA care is relevant, it becomes relevant only to show that the defendant did in fact breed and train roosters for fighting. Indeed, according to Mr. Saville, the moment the roosters had the opportunity, they began fighting one another.

10

## CONCLUSION

For the foregoing reasons, the Government respectfully requests that the Court grant the Government's Motion to Preclude Expert Testimony from Anthony Saville.

Dated: New York, New York
May 8, 2018

                                        Respectfully submitted,

                                        GEOFFREY S. BERMAN
                                        United States Attorney for the
                                        Southern District of New York

By:  /s/
      Alison Moe
      Michael McGinnis
      Timothy Howard
      Assistant United States Attorneys
      Tel.: 212-637-2225/2305/2308

cc: All counsel of record (by ECF)