USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED: 12/4/18

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

-against-

THOMAS CARRANO,

Defendant.

17-Cr-460 (SHS)

OPINION

SIDNEY H. STEIN, U.S. District Judge.

Defendant Thomas Carrano was convicted after a jury trial of conspiracy to violate the Animal Welfare Act, 7 U.S.C. § 2131 *et seq.* After terminating his trial counsel and retaining new counsel, Carrano moved for a judgment of acquittal or, alternatively, for a new trial pursuant to Federal Rules of Criminal Procedure 29 and 33, respectively. For the reasons set forth below, the Court has concluded that the evidence at trial was most certainly sufficient to establish defendant's guilt beyond a reasonable doubt and that the interests of justice do not require a new trial. Therefore, Carrano's motion is denied.

I. **Background**

In February 2016, law enforcement officers from the New York City Police Department ("NYPD") animal cruelty investigation squad responded to a neighbor's complaint that Hector Cruz was keeping roosters in his Bronx backyard. (Tr. 168–69, 204–05.) As a result of the ensuing investigation of whether Cruz was participating in cockfighting, Thomas Carrano also became a target of the investigation. (*Id.* at 345–47.) Both men were active in the New York chapter of the United Gamefowl Breeders Association ("NYUGBA"), for which Carrano served as president. (*Id.* at 188, 458; Gov't Ex. 653G.)

As part of that investigation, NYPD officers, U.S. Department of Agriculture agents, and ASPCA agents searched Carrano's property in Ontario, New York (Tr. at 215–16, 349–50), where they seized a bounty of evidence, including gaffs and postizas—sharp metal and

plastic spurs, respectively, that are attached to chickens' legs.[1] (Tr. 286–90.) Some of these instruments were covered in chicken blood. (*Id.* at 291, 440.) Officers also seized a gallimaufry of incriminating evidence, including vitamin supplements, protective sparring muffs, syringes, a training dummy, and medicine used to stop bleeding in animals. (*Id.* at 67, 251–52, 249, 259–60.) Additionally, some of the birds that they found had been dubbed, meaning they had had their combs, waddles, and earlobes removed (*Id.* at 58, 229), which is consistent with preparing roosters to participate in cockfights (*Id.* at 57–58, 83).

In building the case against Carrano, law enforcement also collected documents from Tennessee that defendant had purchased gaffs from Dwight Orr, a well-known gaff maker there. (Gov't Ex. 208A; Tr. 484–87, 570–71.) Law enforcement also accessed Carrano's extensive text and Facebook communications, including his personal social media account and the Facebook account he managed on behalf of NYUGBA. (*See* Tr. 146–47, 405–07.)

On July 20, 2017, a grand jury returned an indictment charging Carrano with a single count of conspiring to violate the Animal Welfare Act. (Doc. 1.) Superseding indictment S1 charged Carrano with conspiring to accomplish two separate objects in violation of the Act: specifically, (1) possessing and exchanging birds for purposes of having them fight, and (2) possessing and exchanging knives, gaffs, and other sharp instruments to be attached to a bird's leg in a cockfight. (Doc. 25.) Carrano pled not guilty to both indictments. (Docs. 6, 34.)

Defendant was tried before a jury from June 18 to 22, 2018. On June 22, 2018, the jury returned a verdict of guilty (Tr. at 730–31), and Carrano subsequently moved for a judgment of acquittal or, in the alternative, a new trial pursuant to Fed. R. Crim. P. 29 and 33. (Doc. 81.)

## II. Discussion

Defendant contends that the government failed to prove he joined a conspiracy to violate the Animal Welfare Act. He also complains that the indictment omitted an essential element

---

[1] Male chickens are roosters and female chickens are hens. (Tr. 71, 561.) Both are chickens. (*Id.*)

2

of the offense—the interstate commerce requirement—with regard to one of the conspiratorial objectives. Finally, Carrano urges that his Sixth Amendment right to counsel was violated by the poor performance of his trial counsel. As set forth below, each of Carrano's arguments fail to pass the high bar to entering a judgment of acquittal or ordering a new trial.

### A. Legal Standard

Pursuant to Fed. R. Crim. P. 29, the Court may enter a judgment of acquittal only if no rational trier of fact could have found the essential elements of the offense—in this case conspiracy to violate the Animal Welfare Act—beyond a reasonable doubt. *United States v. Cuti*, 720 F.3d 453, 461 (2d Cir. 2013); *United States v. Odiase*, 312 F. Supp. 3d 432, 434 (S.D.N.Y. 2018). In evaluating whether this high standard has been met, the Court considers the evidence in the light most favorable to the government, resolving all reasonable inferences in the government's favor. *United States v. Persico*, 645 F.3d 85, 104 (2d Cir. 2011) (citation omitted); *Odiase*, 312 F. Supp. 3d at 434.

If "the interest of justice so requires," the Court may grant a new trial pursuant to Fed. R. Crim. P. 33(a). The decision to second-guess the jury's verdict should only occur in "extraordinary circumstances" where allowing a guilty verdict to stand would pose a manifest injustice, such as if there were a genuine concern that an innocent person may have been convicted. *United States v. Cacace*, 796 F.3d 176, 191 (2d Cir. 2015); *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009); *Odiase*, 312 F. Supp. 3d at 434.

### B. The Evidence Presented at Trial Amply Supported the Elements of the Charged Conspiracy.

Defendant first offers a scattershot argument that there was insufficient evidence from which the jury could find beyond a reasonable doubt each of the elements of conspiracy to violate the Animal Welfare Act. Although Carrano presents his view of the testimony and exhibits presented at trial, his presentation fails to grapple with the legal standard used to

3

evaluate the sufficiency of the evidence at this post-trial stage. He catalogs the substantial evidence against him, including the training videos, the vitamin supplements, the gaffs and postizas, and the dubbed birds. (*E.g.*, Tr. 57–58, 229, 251, 286–90.) All of these, he maintains, are consistent with showing chickens at poultry shows, a legal activity.

The "task of choosing among competing, permissible inferences is for the [jury and] not for the reviewing court." *United States v. Weingarten*, 632 F.3d 60, 62 (2d Cir. 2011) (citation omitted and alteration in original); *see also Cuti*, 720 F.3d at 461–62. The jury could have inferred, as Carrano's trial attorney argued they should, that this evidence did not constitute a basis upon which to find that Carrano participated in illicit activity. Yet the physical and video evidence found on defendant's property was also entirely consistent with the inference that Carrano was conspiring to engage in cockfighting. The jury, therefore, understandably rejected defendant's theory, as is evident from the verdict it reached within hours of starting deliberations.

Moreover, not all the evidence against Carrano ambiguously supported twin inferences of legal and illegal conduct. The jury learned of many inculpatory statements from Carrano's text messages and personal and professional Facebook accounts. For example: "[L]ike you I fight roosters . . . . Amen I just love them fighting birds since I am 8 years I fought roosters out of abandond cars in the bronx and fought them in Castles." (Gov't Ex. 636A; Tr. 195.) "All we do is fight roosters but you propably like that." (Gov't Ex. 643A; Tr. at 203.) "[G]ot him in the drag I thought I lost an eye but I didnt."[2] (Gov't Ex. 602A; Tr. at 184.) "Wish it was diffrent but these crazy laws make things difficult they need to regulate this sport and make it legal." (Gov't Ex. 627A; Tr. at 214.) "Its our only defense friend Preservation and showing." (Gov't Ex. 653G; Tr. at 325.) From these illustrative examples of the many in the record, the jury was entitled to infer that Carrano was conspiring to engage in cockfighting and not participating solely in legal poultry shows.

---

[2] A "drag" is a smaller fighting pit. (Tr. 52, 70.)

4

Carrano additionally alleges that there was inadequate proof of an overt act committed in furtherance of the charged conspiracy. However, viewing the trial record in the government's favor, there was more than ample evidence for the jury to find multiple overt acts. For example, text messages provide support for a finding that co-conspirator Hector Cruz committed an overt act by mailing Carrano roosters in furtherance of the conspiracy. Their exchange included such statements as, "I sent you a pair of Boles Blacks,"[3] with Carrano responding, "Good morning hector birds arrived." (Gov't Ex. 504; Tr. 415.) Defendant insists that mailing the birds could not be in furtherance of the conspiracy because Cruz only sent Carrano a small fraction of his roost. Cruz would have mailed Carrano more of his birds, the defense argument goes, if he were trying to get rid of his flock in order to evade law enforcement to further a conspiracy. Again, this is a possible inference, but the jury was certainly permitted to infer that sending any chickens was meant to prevent those birds from being seized by police in the Bronx.

The latter inference is made even more plausible given a Facebook exchange in which Carrano indicated that one of Cruz's roosters was subsequently killed in a cockfight. A message sent from the NYUGBA account, which defendant operated, to a third individual stated: "I held some birds for him [Cruz] because he said cops came to give him a visit didnt hear from him in months so I had some friends hold them they lost a rooster by showing . . . ." (Gov't Ex. 627A; Tr. 215.) In light of trial testimony that "going to show" birds was code for cockfighting as part of the effort to avoid attention from law enforcement, Tr. 72, the jury had a substantial basis to find that the multitude of Facebook messages and texts constituted overt acts in furtherance of the conspiracy.

Third, the jury heard evidence to find the possession of paraphernalia, gaffs, postizas, and altered roosters were overt acts in furtherance of the conspiracy. Again, although Carrano's possession of these items and animals could be viewed as proof of a memorabilia

---

[3] "Boles Black" is a breed of fowl.

collection (as regards the gaffs and postizas) or innocent participation in poultry shows, the jury was also permitted to view them as consistent with cockfighting.

Next, Carrano maintains that the government failed to prove both that he was engaged in cockfighting during the time period charged in the indictment and that the alleged animal fighting venture impacted interstate commerce. But the government was under no obligation to prove that defendant himself fought chickens on any particular occasion or that a cockfight affecting interstate commerce even occurred. The charge was for *conspiracy* to violate the Animal Welfare Act and not the underlying substantive offense. For this conspiratorial objective, the jury only had to conclude that during the dates in question—January 2012 to June 2017 (Doc. 25, ¶ 6)—defendant agreed to deal in chickens to be used in a fight that would affect interstate commerce. Given the discussion of selling chickens across state lines (Gov't Ex. 650A), as well as the shipment of gaffs from Tennessee to New York (Gov't Exs. 115A, 208A), the jury was entitled to reach this conclusion.

For the other conspiratorial objective, defendant asserts that there was insufficient evidence that he entered into an agreement to buy or deliver gaffs for use in an animal fighting venture. He compares his relationship to Dwight Orr as Orr being a drug seller and Carrano akin to a mere drug buyer, who is not treated as part of a narcotics distribution conspiracy. *See, e.g., United States v. Dove*, 884 F.3d 138, 151 (2d Cir. 2018). His analogy is inapt. Carrano did more than just purchase and possess gaffs. (Tr. 109–13, 428–29, 487.) In a Facebook message, he referred someone to Orr, encouraging the third party to mention Carrano's name and trade on defendant's personal relationship with the seller: "Hello Cody Dwight orr [phone number] just tell him you are a friend of Tommy Carrano president of NY and highly recommended his collectibles." (Gov't Ex. 628A; Tr. 458.) Defendant also vouched for the quality of the products, stating in another message, "Dwight orr makes mine and I like them." (Gov't Ex. 634B; Tr. 319.) The jury certainly could find not only that they were discussing gaffs, but that such steering and vouching for customers were telltale signs of membership in a conspiracy. *See United States v. Felder*, 214 F. Supp. 3d 220, 225–26 (S.D.N.Y.

6

2016). Viewing this evidence in the light most favorable to the government, a rational juror could certainly conclude that Carrano and Orr were part of a conspiracy to distribute cockfighting weapons that were referenced under the sobriquet of "collectibles."

Defendant raises one final point in his sufficiency argument. According to Carrano, the government had to prove separately for each alleged object of the conspiracy that venue was proper. This burden was not met, he says, for the second object of the conspiracy involving possessing gaffs or other sharp instruments. Defendant provides no support for his assertion that venue must be established for each alleged object. The Second Circuit has written repeatedly that the government must prove venue with regard to each *count*, *e.g.*, *United States v. Lange*, 834 F.3d 58, 71 (2d Cir. 2016); *United States v. Novak*, 443 F.3d 150, 161 (2d Cir. 2006), but has never held that venue must be proven for each *object* of the conspiracy. In addition, Carrano's precise argument has been rejected by the District Court for the District of Columbia, which held that the government need only prove an overt act committed in furtherance of the conspiracy as a whole and not in furtherance of each objective. *United States v. Hsia*, 24 F. Supp. 2d 14, 22 (D.D.C. 1998). In light of the evidence that Cruz sent birds to Carrano from the Bronx, *inter alia*, the government easily satisfied that burden. Venue in the Southern District of New York was proper.

In sum, there was more than adequate evidence from which a jury could find beyond a reasonable doubt each of the elements of the conspiracy as charged.

### C. **Defendant's Claim that the Indictment Failed to Allege an Essential Element of the Crime Is Both Waived and Meritless.**

Carrano identifies an alleged defect in superseding indictment S1: the failure to allege a key element of one of the two objects of the conspiracy to violate the Animal Welfare Act. (Doc. 25.) An indictment is impermissibly defective if it fails to "set out all of the essential elements of the offense charged." *United States v. Gonzalez*, 686 F.3d 122, 127 (2d Cir. 2012). Here, each of the charged objects of the conspiracy required an impact on interstate or foreign

7

commerce. *See* 7 U.S.C. § 2156(b), (e). Yet the indictment omitted, fatally in the defendant's view, that the alleged sale, purchase, possession, training, transportation, delivery, or receipt of birds for purposes of their participation in cockfighting affected interstate commerce. (Doc. 25, ¶¶ 6–7.)

Defendant makes this argument too late. Fed. R. Crim. P. 12(b)(3)(B) requires the defense to raise pre-trial any defect in the indictment where the basis for the motion was reasonably available. Where defendants have failed to call attention to a lack of compliance with Rule 12(b)(3)'s strictures for other pre-trial motions, the Second Circuit has required a valid showing of cause in order to escape waiver. *See United States v. Martinez*, 862 F.3d 223, 233–34 (2d Cir. 2017). Carrano's attorney concedes *sub silentio* that his argument was available to him pre-trial. (Doc. 94, at 6.) Apart from arguing that defendant's trial counsel was incompetent, defendant provides no justification for the delay in challenging the alleged defect. Accordingly, the Court finds that this issue has been waived.

Even considering the substance of defendant's claim, however, the indictment sufficiently alleged an impact on interstate commerce. When evaluating a post-trial objection to the indictment raised after the jury has rendered its verdict, the indictment is interpreted "liberally, in favor of sufficiency." *United States v. De La Pava*, 268 F.3d 157, 162 (2d Cir. 2001). For this analysis, the U.S. Supreme Court's decision in *Hamling v. United States*, 418 U.S. 87 (1974), is instructive. *Hamling* upheld an indictment as sufficient where it incorporated an essential element of the charged offense by way of a legal term of art. *Id.* at 118–19. That is precisely what the indictment in this case does. It alleged one of the objects of the conspiracy was the knowing sale, purchase, possession, training, transportation, delivery, or receipt of "animals for purposes of having the animals participate in an *animal fighting venture* . . . ." (Doc. No. 25, ¶ 7 (emphasis added).) The Animal Welfare Act defines an "animal fighting venture" as "any event, *in or affecting interstate or foreign commerce*, that involves a fight conducted or to be conducted between at least 2 animals for purposes of sport, wagering, or

8

entertainment . . . ." 7 U.S.C. § 2156(g)(1) (emphasis added). The indictment, therefore, included a legal term of art that directly imported the required interstate impact.

Defendant's attempts to distinguish *Hamling* are unpersuasive. The use of "obscene" in *Hamling*, Carrano maintains, reflected reliance on a "constitutional definition," 418 U.S. at 119, in contrast to the statutory definition at issue in the case at hand. But *Hamling*'s reasoning—that the term is "sufficiently definite in legal meaning to give a defendant notice of the charge against him," *id.* at 118—applies with equal force whether the legal definition comes from constitutional jurisprudence or a statute. The Second Circuit has applied *Hamling* to terms of art from statutes where they carry the same meaning "from statute to statute or indictment to indictment." *United States v. Carrier*, 672 F.2d 300, 303 (2d Cir. 1982). For example, the Second Circuit determined that it was "necessarily implie[d] that the essential element of interstate commerce [was] charged in the indictment" where it used the term "labor organization," which was defined in a way that incorporated an effect on interstate commerce. *United States v. Silverman*, 430 F.2d 106, 110–11 (2d Cir. 1970).

Defendant's reliance on two decisions from the Fourth Circuit is misplaced. In *United States v. Hooker*, 841 F.2d 1225 (4th Cir. 1988), the Fourth Circuit found an indictment insufficient because it failed to allege that the conduct at issue affected interstate commerce. *Id.* at 1227–33. Though the defendant had actual notice of the charges against him, the grand jury had not necessarily considered and found all of the requisite elements present. *Id.* at 1230. Later, in *United States v. Kingrea*, 573 F.3d 186 (4th Cir. 2009), that circuit deemed defective an indictment alleging a conspiracy to violate 7 U.S.C. § 2156(a)(1) because it omitted the statutory phrase "an animal in." *Id.* at 191–94. According to *Kingrea*, this broadened the character of an Animal Welfare Act violation to merely sponsoring an animal fighting venture and not specifically sponsoring *an animal in* such a fight. *Id.* at 192.

However, Carrano elides a key distinction between *Hooker* and *Kingrea* and this matter. As the Fourth Circuit clarified in *United States v. Wicks*, 187 F.3d 426 (4th Cir. 1999), the use of a legal term of art does not inherently cure a defective indictment. *Id.* at 428–29. Rather, the

9

term's definition must include the legal meaning of the omitted language. *Id.* Thus, where an indictment contains a term whose legal definition includes as a component part an interstate commerce requirement—"organization" in *Wicks*—the indictment adequately charged the interstate commerce element. *Id.* at 427–29. In contrast, the indictment in *Hooker* was fatally flawed because the term used in the charge, "enterprise," "did not encompass the interstate commerce element that was found to be lacking." *Id.* at 429.

Because the indictment in this action incorporated the interstate commerce requirement through the use of the statutorily-defined phrase "animal fighting venture," the indictment here was sufficient.

### D. The Representation Provided by Defendant's Trial Counsel Was Constitutionally Adequate and Caused Defendant No Prejudice.

Last, Carrano has failed to show that his Sixth Amendment right to counsel was violated by the poor performance of his initial representation by Andrew Karpf, Esq., and Peter Bark, Esq. To prevail on a claim of ineffective assistance of counsel, Carrano must overcome the strong presumption that his attorneys' representation met an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 687–88 (1984); *Weingarten v. United States*, 865 F.3d 48, 52 (2d Cir. 2017). He also must establish that but-for his attorneys' alleged missteps, there was a reasonable probability of a different outcome, thus undermining confidence in the verdict. *Strickland*, 466 U.S. at 694; *Gonzalez v. United States*, 722 F.3d 118, 135 (2d Cir. 2013). Examining Carrano's arguments individually and together, he has failed to satisfy both prongs of the *Strickland* standard.

Carrano takes issue with the attorneys' failure to make a preemptive motion regarding how historical cell site records were obtained based on the Supreme Court's not-yet-issued decision in *Carpenter v. United States*, 138 S. Ct. 2206 (2018). *Carpenter*, decided the day the jury returned its verdict, generally requires the government to obtain a warrant supported by probable cause in order to acquire cell-site location information. *Id.* at 2221. Yet attorneys

are not required to predict changes in the law. *Weingarten*, 865 F.3d at 53. Even following *Carpenter*, the Second Circuit has declined to suppress cell phone location evidence obtained in good faith reliance on prior existing law. *United States v. Chambers*, __ F. App'x __, 2018 WL 4523607, at *1–*3 (2d Cir. Sept. 21, 2018); *United States v. Zodhiates*, 901 F.3d 137, 143–44 (2d Cir. 2018). The Second Circuit in *Chambers* rejected the argument rehashed by Carrano that *United States v. Jones*, 565 U.S. 400 (2012), provided notice that a search warrant was required. 2018 WL 4523607, at *3. As a result, the applicability of the good faith doctrine, in addition to excluding the risk of prejudice, entitles Carrano's trial counsel to the presumption that the failure to move was reasonable trial strategy.

Carrano complains that his counsel should have discovered and employed certain documents contained on the forensic image of his CPU. He speculates, without any evidentiary support, that his attorneys never located the documents. Although defendant claims his computer contained documents constituting Brady material, they are merely redundant proof that Carrano participated in poultry shows. Such evidence is not necessarily exculpatory, given that the government argued the poultry shows were a necessary cover for cockfighting. There was an evidentiary basis for this theory, including testimony that "going to show" was code for cockfighting and a message that "[p]reservation and showing" are "our only defense," as Carrano wrote. (Tr. 72; Gov't Ex. 653G.) Moreover, the fact that Carrano may very well have shown his roosters at legitimate poultry shows does not mean he did not also fight his birds in cockfights. Carrano has not shown that the failure to introduce specific documents from his computer would have changed the jury's verdict.[4]

---

[4] Although Carrano claims that a more competent attorney would have been able to negotiate a settlement, an alternative form of prejudice, he says, the defendant presents no proof demonstrating a reasonable probability that the government would have offered a plea deal or that, if offered, Carrano would have accepted it. Since Carrano maintains that he did not commit the charged offense (Doc. 96, at 2), such a plea, even with the best counsel, seems unlikely.

11

Defendant objects that his prior attorneys were deficient in not giving to Carrano all the discovery materials that the government had turned over to the defense. He also criticizes Bark for not more proactively getting copies of the government's trial exhibits or 3500 material the weekend before trial. However, "[d]efense counsel is not required to present a defendant, for his review, with all discovery material that defense counsel acquires." *Rodriguez v. United States*, Nos. 11 Civ. 6707, 09 CR 58, 2013 WL 3388223, at *6 (S.D.N.Y. July 8, 2013). Furthermore, to establish prejudice, a defendant must connect how additional review of these materials would have impacted a trial's outcome. *See Ramos v. United States*, Nos. 09 Civ. 3500, 98 Cr. 1038, 2010 WL 1875721, at *7 (S.D.N.Y. May 10, 2010); *United States v. Im*, No. 07 Cr. 737, 2009 WL 2191231, at *11 (S.D.N.Y. July 17, 2009). Carrano fails to explain how his examining the additional documents and messages, many of which he had either authored himself or had personally received (and in any event he could access himself through his two Facebook accounts), would have changed his trial's result.

Defendant also faults his trial attorney Bark for his weekend plans preceding the trial—specifically, his attendance at a Long Island Ducks baseball game. Attorneys are under no constitutional obligation to spend the entirety of the days prior to trial on preparing with the inability to do anything else. And Carrano fails to explain how his trial would have differed had Bark spent more time reviewing the government's exhibits and discovery materials before trial.

Bark was not so ineffective at trial as to offend the Constitution. He vigorously made objections, cross-examined witnesses, and put on a defense case, including witnesses and the testimony of Carrano himself. Carrano complains that his lawyer engaged in certain baseless objections and voir dire questioning. But when to make an objection is generally considered a matter of trial strategy. *United States v. Cohen*, 427 F.3d 164, 170–71 (2d Cir. 2005). And defendant fails to explain how these objections undermine confidence in the verdict.

Defendant insists his counsel was deficient for not better preparing the defense witnesses, including Carrano, to testify. Defendant submits affidavits from defense witnesses

12

describing Bark's minimal preparation of them prior to their testifying. Though Carrano would have had Bark spend more time preparing the defense witnesses, the Constitution has imposed "no set rule for the number of times counsel must meet with a defendant." *Rodriguez v. Uhler*, No. 15-CV-5075, 2017 WL 354180, at *11 (S.D.N.Y. Jan. 24, 2017). Meeting with a witness or even the defendant for brief periods as short as five to ten minutes has been deemed adequate. *E.g., Ortiz v. Heath*, No. 10-CV-1492, 2011 WL 1331509, at *12–*13 (E.D.N.Y. Apr. 6, 2011); *Byas v. Keane*, No. 97 CIV. 2789, 1999 WL 608787, at *5 (S.D.N.Y. Aug. 12, 1999).

Defendant claims that proposed additional testimony from defense witnesses, as outlined in the affidavits submitted with his post-trial motion, would have changed the jury's verdict. Yet for the most part, the belatedly desired testimony would have at most only amplified the argument he had already presented to the jury that much of the evidence against him was consistent with showing birds legally at poultry shows. Because the jury already rejected that he was merely showing birds and not also fighting them, there is not a reasonable chance that further testimony would have led to a different result.

Finally, Carrano raises concerns about potential motions his lawyer did not make. Bark did not move for judgment of acquittal before the jury retired, but the Court would undoubtedly have denied such a motion given the substantial, if not overwhelming, evidence against Carrano. Bark also did not seek a jury determination on forfeiture, but the point is moot since the government has abandoned its pursuit of criminal forfeiture in connection with this matter. (Doc. 100.) Thus, any prejudice is lacking.

Viewing all of Bark's alleged shortcomings both separately and cumulatively, Carrano has not overcome the strong presumption that his counsel's representation at trial was constitutionally adequate. Even assuming for the purpose of analysis that trial counsel performed deficiently, Carrano has not shown that he was prejudiced.

### III. Conclusion

The evidence was beyond sufficient for the jury to find, as it did, each element of the offense proven beyond a reasonable doubt, and this trial most certainly does not present the extraordinary circumstance where the Court is concerned an innocent person has been convicted. Carrano conspired to violate the Animal Welfare Act, as the jury found. For the reasons set forth above, defendant's Rule 29 and Rule 33 motion for a judgment of acquittal or in the alternative a new trial is denied.

Dated: New York, New York
December 4, 2018

_____
Sidney H. Stein, U.S.D.J.